Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,298-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOE ANGEL TOVAR                          Appellant

* * * * *

Appealed from the
Thirty-Ninth Judicial District Court for the
Parish of Red River, Louisiana
Trial Court No. 141,488

Honorable Luke D. Mitchell, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Annette Fuller Roach

JOE ANGEL TOVAR                              Pro Se

JULIE C. JONES                          Counsel for Appellee
District Attorney

BEN LANGFORD
Assistant District Attorney

* * * * *

Before COX, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

Having been convicted by a unanimous jury as charged of second degree murder, illegal use of weapons, and two counts of obstruction of justice, Joe Angel Tovar appeals his obstruction of justice conviction related to his handling of a digital voice recorder between interviews by investigators from the Red River Parish Sheriff's Office ("RRPSO"). Concluding that the state failed to prove all the essential elements of obstruction of justice beyond a reasonable doubt, we reverse that conviction. Tovar's remaining convictions and sentences are affirmed. This matter is remanded to the trial court to correct the minutes and the Uniform Sentencing Commitment Order.

## FACTS

In the early morning hours of Monday, June 21, 2021, Tovar shot and killed Devin Wilson in the apartment of Jessica Williams. Wilson suffered a single gunshot to his upper abdomen. Tovar had been at the apartment, which is located in Red River Parish, since June 19. While there, he and Williams smoked methamphetamine and marijuana. Wilson, who was there for Williams to press his hair, tested positive for methamphetamine in his autopsy.

Williams stated to the police that she was in the kitchen and heard a popping sound. She added that Tovar told her that he had shot Wilson, but did not know why, and then he left her apartment. Later that day, Williams identified Tovar as the shooter in a photo lineup.

Tovar was interviewed at the RRPSO station on the afternoon of June 21. Tovar gave several reasons why he killed Wilson. He told the investigators that he was forced to kill Wilson over a disagreement that

dated back to the 1990s. Interestingly, Tovar and Wilson were born in the 1990s. Tovar also stated that he had to protect his family. Tovar indicated that Wilson had a knife, but no weapons were found at the scene. Tovar stated that a Smith & Wesson 9mm handgun was the weapon that he used to shoot Wilson.

Darren Keel, a detective with the RRPSO, had placed a digital voice recorder on the table in the interview room as a backup recording device. When he later reviewed the video from the interview to prepare his report, he noted that Tovar appeared to try to turn the recorder off and remove its batteries.

The police searched Tovar's residence on June 21 pursuant to a search warrant. A frame for a Smith & Wesson 9mm handgun was found on a shelf in his home, and a tote bag was found in his yard. The corner of the bag was burned as if a projectile had been fired from inside the bag, and the interior of the bag tested presumptively positive for gunshot residue. A spent cartridge casing and a Smith & Wesson magazine containing 9mm bullets were also found in the yard.

The search was stopped because of stormy weather. Officers returned the next day to complete the search of Tovar's residence, and with his assistance, they found the slide and barrel for the Smith & Wesson handgun in his yard. A 9mm projectile was removed from Wilson during his autopsy.

The parts of the handgun found in Tovar's home and in his yard were reassembled at the crime lab for analysis purposes. It was determined that the spent cartridge found in Tovar's yard and the projectile recovered from Wilson's body had been fired from Tovar's gun.

2

DNA testing of the handgun frame showed that Tovar's DNA profile was consistent with the DNA of the major contributor found on it. DNA testing of the magazine found DNA consistent with Tovar's DNA profile.

On October 18, 2021, Tovar was indicted for the second degree murder of Devin Wilson in violation of La. R.S. 14:30.1, the illegal use of weapons in violation of La. R.S. 14:94(A), and two counts of obstruction of justice in violation of La. R.S. 14:130.1 in that he tampered with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding.

Keel testified at trial that he was using the voice recorder in the investigation. He testified that Tovar was shown on the video grabbing the recorder from the table and trying to turn it off. It also appeared that he was trying to access the battery compartment to remove the batteries from it. At one point, Tovar picked up the device and placed it under the table before putting it back on the table. Tovar grabbed the device again and put it under the table.

The jury found Tovar guilty as charged on all counts. Defense counsel filed a motion for new trial and a motion for post verdict judgment of acquittal. The motions were denied.

Tovar was sentenced to one year at hard labor for the illegal use of weapons conviction. For each obstruction of justice conviction, he was sentenced to 20 years at hard labor. He was sentenced to life imprisonment at hard labor and without benefit of probation, parole, or suspension of sentence for his second degree murder conviction. The sentences were to be served concurrently.

**DISCUSSION**

Tovar argues on appeal that the evidence was insufficient to prove beyond a reasonable doubt that his touching and moving of the digital voice recorder between interview sessions was done with the specific intent to distort the results of any criminal investigation or proceeding or with knowledge that such act was reasonably likely to affect a criminal investigation. Tovar maintains that he was merely fidgeting with the recorder as he was coming down from his methamphetamine high.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Dotie*, 43,819 (La. App. 2 Cir. 1/14/09), 1 So. 3d 833, *writ denied*, 09-0310 (La. 11/6/09), 21 So. 3d 297.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Green*, 49,741 (La. App. 2 Cir. 4/15/15), 164 So. 3d

4

331. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156.

The *Jackson* standard of review is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Hampton*, 52,403 (La. App. 2 Cir. 11/14/18), 261 So. 3d 993, *writ denied*, 19-0287 (La. 4/29/19), 268 So. 3d 1029.

Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. *Id.* When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Lilly*, *supra*; *State v. Green*, *supra*.

The obstruction of justice statute, La. R.S. 14:130.1, states in relevant part:

A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section: (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:

(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or

(b) At the location of storage, transfer, or place of review of any such evidence.

Regarding the elements of the crime of obstruction of justice under La. R.S. 14:130.1(A)(1), our supreme court has stated:

First, as in every type of obstruction case, the obstruction must be committed "with the knowledge that such act has, reasonably may, or will affect an actual or potential, past, or future criminal proceeding." . . . In this case, the knowledge requirement is met if the perpetrator merely knows that an act "reasonably may" affect a criminal proceeding. The statute does not require the criminal proceeding actually be affected, the perpetrator just must know and understand that the act reasonably may affect the proceeding. Further, the criminal proceeding need not already be underway, it need only be a "potential," "future" proceeding. . . .

The second requirement relevant to this case is that the perpetrator tamper "with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." La. R.S. 14:130.1(A)(1). Again, the tampering does not actually have to distort the results of any criminal investigation, the perpetrator need only have the specific intent to distort the results. . . . Next, the evidence tampered with must "reasonably prove relevant" to *any* criminal investigation. . . .

Third, the statute provides that the tampering be either by the intentional "alteration, movement, removal, or addition of any object or substance." Indeed, taken in its "usual sense," the term movement encompasses the action by defendant in this case, as defendant clearly moved the marijuana from his pocket to the ground. While defendant argues that he did nothing further in an attempt to destroy, obliterate, or conceal the drugs, nothing

6

beyond "movement" is required by the statute if accompanied by the requisite intent and knowledge.

Finally, the tampering must be done "at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation" by law enforcement officers.

*State v. Jones*, 07-1052, pp. 9-11 (La. 6/3/08), 983 So. 2d 95, 101-102. (Footnotes omitted.)

The state did not prove beyond a reasonable doubt that Tovar knew that his act may affect a criminal proceeding or that he handled the recorder with the specific intent of distorting the results of any criminal investigation or proceeding. Although Tovar moved the recorder while he was alone, there was no evidence that Tovar had erased or destroyed any recording. In fact, the parts of the interview played for the jury occurred after Tovar had handled the recorder. There was no evidence that the recorder was missing or damaged.

The state also failed to exclude the reasonable hypothesis of innocence that Tovar was fidgeting with the recorder because he was coming down from his methamphetamine usage. There was testimony from the state's witnesses that methamphetamine is a stimulant, and someone under its influence may fidget, be unable to sit still, or need something to do with their hands. Tovar told the investigators that he was high on methamphetamine. He had spent a weekend smoking methamphetamine with Williams before the murder.

For the foregoing reasons, we reverse Tovar's obstruction of justice conviction related to his handling of the digital voice recorder in the RRPSO's interview room. His remaining convictions and sentences are affirmed.

7

*Errors patent*

The trial court did not advise Tovar of the prescriptive period for seeking post-conviction relief ("PCR"), as required by La. C. Cr. P. art. 930.8(C). Therefore, we advise Tovar, by way of this opinion, that no application for PCR shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under La. C. Cr. P. arts. 914 or 922. *State v. Kelly*, 52,731 (La. App. 2 Cir. 6/26/19), 277 So. 3d 855, *writ denied*, 19-01845 (La. 6/3/20), 296 So. 3d 1071.

We note that the Uniform Sentencing Commitment Order lists the sentences for the illegal use of weapons and obstruction of justice convictions as being imposed without benefit of parole, probation, or suspension of sentence. This was in error as the only sentence to be served without benefits is the sentence for the second degree murder conviction. Accordingly, we remand this matter to the trial court to correct the Uniform Sentencing Commitment Order.

Finally, we note that the minutes incorrectly state that for the second degree murder conviction, Tovar was sentenced to life at hard labor without benefit of parole or probation. We additionally remand this matter to the trial court to correct the minutes to state that his life sentence is to be served without benefit of parole, probation, or suspension of sentence.

## CONCLUSION

Tovar's conviction for obstruction of justice related to the digital voice recorder is reversed. His remaining convictions and sentences are affirmed. This matter is remanded to the trial court to correct the minutes and the Uniform Sentencing Commitment Order.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED**.